UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| CHRIS H. CAVE, | Case No. 2:15-CV-122 JCM (VCF) |
| Plaintiff(s), | ORDER |
| v. | |
| NATIONAL DEFAULT SERVICING CORPORATION, et al., | |
| Defendant(s). | |

Presently before the court are defendant JPMorgan Chase Bank, N.A.'s ("Chase")[1] motion to dismiss for failure to state a claim (doc. # 5) and motion to expunge lis pendens (doc. # 6).[2] Defendant National Default Servicing Corporation ("National Default") joined both of Chase's motions. (Doc. # 9). *Pro se* plaintiff Chris H. Cave filed a response (doc. # 10), and Chase filed a reply (doc. # 13).

Also before the court are plaintiff's petition for leave to amend complaint (doc. # 26) and motion to expand page limit (doc. # 27). None of the defendants filed responses and the deadline to do so has passed.

. . .

. . .

. . .

---

[1] Chase appears for itself and as a receiver for Washington Mutual Bank.

[2] Chase filed a combined motion to dismiss for failure to state a claim and to expunge lis pendens. In accordance with Special Order 109, the clerk's office split the motion and docketed each motion as a separate entry. (Docs. ## 5, 6). The two motions are identical in substance.

**James C. Mahan**
**U.S. District Judge**

**I.      Background**

This is a mortgage-foreclosure related action relating to the real property at 919 Linn Lane, Las Vegas, Nevada 89110-2600.[3] (Doc. # 5-1 at 69). In May 2007, plaintiff and his non-party spouse obtained a $272,000.00 loan from Washington Mutual Bank. (Doc. # 5-6 at 2-10). California Reconveyance Company was the original trustee under the deed of trust. (Doc. # 5-7 at 2). The loan was secured by a deed of trust lien on the Clark County, Nevada, residential property of plaintiff.

In September 2008, the Office of Thrift Supervision closed Washington Mutual Bank and appointed the Federal Deposit Insurance Company ("FDIC") as receiver. (Doc. # 5-2 at 2). FDIC seized Washington Mutual Bank's assets and sold the seized assets to Chase. (*See* docs. ## 5-2 at 2; 5-3).

As a part of the acquisition, Chase acquired the rights of Washington Mutual Bank as lender and beneficiary arising under all of the loan assets of Washington Mutual Bank, including the note and deed of trust. (Doc. # 5-3 at 9).

On April 30, 2012, plaintiff signed notarized statements, acknowledging that he entered into the agreements concerning the loan and that he made one or more payments to Chase in connection with the loan.[4] (Docs. # 5-8; 5-9). Plaintiff also asserted that he had somehow "discharged any and all alleged debt" arising from the loan. (*Id.*). Plaintiff recorded the statements on May 1, 2012.[5] (Docs. ## 5-8 at 2; 5-9 at 3). On July 17, 2012, plaintiff's wife signed a notarized

---

[3] The court must lean heavily on the documents provided by defendant to understand the factual background. Plaintiff's complaint, though incredibly long, provides very few specific facts. The court judicially recognizes all of the following documents: the deed of trust, the assignments of the deed of trust, the substitution of trustee, the *lis pendens*, and other documents filed with the Clark County, Nevada recorder's office. *See Intri-Plex Technology, Inc. v. Crest Group, Inc*., 499 F.3d 1048, 1052 (9th Cir. 2007) ("A court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment as long as the facts are not subject to reasonable dispute.")

[4] Defendants assert that plaintiff has not made any payments on the loan since on or around April 14, 2012. (Doc. # 5-1 at 29).

[5] A duplicate of one of the statements was also recorded on July 16, 2012. (Doc. # 5-9 at 2).

James C. Mahan
U.S. District Judge

- 2 -

statement acknowledging that she entered into the agreements concerning the loan. (Doc. # 5-10 at 2-3). Plaintiff recorded the statement on July 18, 2012. (*Id.*).

On August 21, 2012, plaintiff filed a notarized notice of dispute with National Default. (Doc. # 5-1 at 31-33). Plaintiff asserted that he was "exercising all [his] rights under the 'Fair Debt Collections Practices Act' . . . which stipulates that a debt collector must, if requested, provide verification of the alleged debt . . . ." (Doc. # 5-1 at 31). National Default sent a response acknowledging receipt of plaintiff's request to verify the debt in connection with the pending trustee sale. (Doc. # 5-1 at 37). National Default sent plaintiff a copy of the note, deed of trust, assignment, payment history, and payoff figures and reinstatement figures (for verification of debt purposes). (*Id.*).

National Default informed plaintiff that the servicer had directed them to proceed with the foreclosure action and to record a notice of default. (*Id.*). National Default informed plaintiff that they would provide him a copy of the notice of default and that he could also follow the status of the file on their website. (*Id.*).

On September 10, 2012, a corporate assignment of deed of trust was recorded to "further memorialize the transfer that occurred [between FDIC and Chase] by operation of law on September 25, 2008 . . . ." (Doc. # 5-11 at 2).

On March 25, 2013, Chase substituted National Default as trustee under the deed of trust. (Doc. # 5-12 at 2). On October 7, 2014, as a result of plaintiff's failure to make payments under the note, National Default as trustee recorded a notice of default and election to sell under the deed of trust. (Doc. # 5-13).

On January 6, 2015, Nevada's foreclosure mediation program recorded a certificate against the property. (Doc. # 5-1 at 69). Plaintiff still did not cure his payment default. Accordingly, on January 20, 2015, National Default recorded a notice of trustee's sale. (Doc. # 5-15 at 2). National Default scheduled the sale for February 6, 2015, at 10:00 AM.

Plaintiff initiated the instant case on January 21, 2015. (Doc. # 1). Plaintiff's complaint alleges "violations of the Fair Credit Reporting Act, Title 15 U.S.C. §1681, Fair Debt Collection

**James C. Mahan**
**U.S. District Judge**

- 3 -

Practices Act, Title 15 U.S.C. § 1692 . . . and other breaches of law . . . ." (Doc. # 1 at 2). On January 26, 2015, plaintiff recorded a notice of lis pendens against the property. (*Id.*, exh. P).

## II.     Legal Standard

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citation omitted). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949 (citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint. *Id.* at 1950. However, legal conclusions are not entitled to the assumption of truth. *Id.* at 1950. Mere recitals of the elements of a cause of action, supported by only conclusory statements, do not suffice. *Id.* at 1949. Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 1950. A claim is facially plausible when the plaintiff's complaint alleges facts that allows the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 1949.

Where the complaint does not "permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not shown, that the pleader is entitled to relief." *Id.* (internal quotations and alterations omitted). When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The *Starr* court stated, "First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action,

**James C. Mahan**
**U.S. District Judge**

- 4 -

but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.*

### III. Discussion

#### A. Violations of the Fair Credit Reporting Act against Chase

To state a Fair Credit Reporting Act ("FCRA") claim under § 1681s–2(b) against a furnisher of information, a consumer must allege that "1) the furnisher provided inaccurate information to the credit reporting agency ("CRA"); 2) the CRA notified the furnisher of a dispute; and 3) the furnisher failed to conduct a reasonable investigation into the accuracy of the disputed information, in light of the information provided to it by the CRA." *Middleton v. Plus Four, Inc.,* No. 2:13-cv-01421-GMN-GWF, 2014 WL 910351, at *3 (D. Nev. Mar. 7, 2014).

Plaintiff asserts that on October 25, 2014, he notified the "three major credit reporting agencies" of a dispute regarding his credit report. (Doc. # 1 at ¶ 15). However, plaintiff fails to allege that Chase was ever presented a dispute by any credit reporting agency, which would have triggered Chase's duty under the FCRA. Further, plaintiff fails to allege that he is current on his mortgage. Thus, the reported negative information to the credit reporting agencies was likely appropriate. The court will dismiss plaintiff's FCRA claim.

#### B. Violations of invasion of privacy against Chase

"A cause of action for invasion of privacy requires: (1) an intentional intrusion by defendant; (2) on the solitude or seclusion of the plaintiff; (3) that would be highly offensive to a reasonable person." *Downs v. River City Grp., LLC,* No. 3:11-cv-0885-LRH-WGC, 2012 WL 1684598, at *4 (D. Nev. May 11, 2012). The tort has a public disclosure requirement, which contemplates disclosure to more than individuals or small groups. *Kuhn v. Account Control Tech., Inc.,* 865 F. Supp. 1443, 1448 (D. Nev. 1994).

**James C. Mahan**
**U.S. District Judge**

Plaintiff alleges that Chase is a "mere 3rd party 'debt collector' and a complete total stranger, (notwithstanding their: notorious criminal reputation,) to this Plaintiff, Who has absolutely no recollection of ever having any actual contractual relationship whatsoever with [Chase] and Plaintiff has never applied for any credit or services with this Defendant either." (Doc. # 1 at ¶ 31). Plaintiff asserts that he has the right to investigate where and how Chase obtained his personal and private credit information.

Plaintiff does not specifically allege that Chase publically disclosed any private information. Rather, plaintiff asserts that he has a right to investigate how Chase obtained his personal and private credit information. Construing plaintiff's claim liberally the court believes plaintiff is alleging that Chase disseminated his private information by reporting negative information to the credit reporting agencies.

Plaintiff fails to state a viable claim for relief. Plaintiff has not alleged any facts which suggest an intrusion occurred that is "highly offensive to a reasonable person," let alone any facts that suggest an "intentional intrusion" occurred at all. Thus, there are no facts to suggest a plausible claim for relief.

### C. *Negligent, wanton, and/or intentional hiring and supervision against Chase and National Default*

Plaintiff asserts a claim for "negligent, wanton, and/or intentional hiring supervision of incompetent employees or agents . . . ." (Doc. # 1 at ¶¶ 34-36). To state a claim for negligent training and supervision in Nevada, a "plaintiff must show (1) a general duty on the employer to use reasonable care in the training and/or supervision of employees to ensure that they are fit for their positions; (2) breach; (3) injury; and (4) causation." *Montes v. Bank of Am. NA.,* 2:13-cv-660-RCJ-VCF, 2013 WL 5882778, at *7 (D. Nev. Oct. 30, 2013) (citing *Okeke v. Biomat USA, Inc.,* 927 F. Supp. 2d 1021, 1028 (D. Nev. 2013)).

"Claims for negligent training and supervision are based upon the premise that an employer should be liable when it places an employee, who it knows or should have known behaves wrongfully, in a position in which the employee can harm someone else." *Okeke*, 927 F. Supp. 2d at 1028. However, an "employee's wrongful behavior does not in and of itself give rise to a claim

James C. Mahan
U.S. District Judge

- 6 -

for negligent training and supervision." *Id.* Claims for negligent hiring, on the other hand, depend on an employer breaching its "general duty . . . to conduct a reasonable background check on a potential employee to ensure that the employee is fit for the position." *Rockwell v. Sun Harbor Budget Suites,* 112 Nev. 1217, 1227 (1996) (quoting *Burnett v. C.B.A. Security Serv.,* 107 Nev. 787, 789 (1991)).

In his complaint, plaintiff fails to plead any facts to establish that Chase or National Default "owed [him] a duty of care, as he does not name specific employees, does not identify the alleged incompetence, or otherwise describe the conduct giving rise to this cause of action." *See Gomez v. Countrywide Bank, FSB*, O'Connor *v. Capital One, N.A.,* No. CV 14-00177-KAW, 2014 WL 2215965, at *9 (N.D. Cal. May 29, 2014) (facing a substantially similar complaint). In addition, plaintiff has not alleged any facts to suggest that this is a viable claim for relief, such as that Chase or National Default failed to conduct reasonable background checks. The court will dismiss plaintiff's negligent hiring and supervision claim.

    D. *Violations of the Fair Debt Collection Practices Act against Chase and National Default*

The Fair Debt Collection Practices Act ("FDCPA") provides that activities undertaken in connection with a non-judicial foreclosure do not constitute debt collection under the FDCPA. *See Diessner v. Mortg. Elec. Reg. Sys., Inc.*, 618 F. Supp. 2d 1184, 1188–89. Plaintiff's claim against defendants must be dismissed because the defendants have undertaken activities connected with the non-judicial foreclosure sale of the property at issue, and they are not considered "debt collectors" under the FDCPA. *See Gillespie v. Countrywide Bank FSB*, No. 3:09-cv-556-JCM-VPC, 2011 WL 3652603, at *2 (D. Nev. Aug. 19, 2011). The court will dismiss plaintiff's FDCPA claim.

    E. *Expunge lis pendens*

Pursuant to NRS § 14.015(3), the party who records a notice of pendency "must establish to the satisfaction of the court . . . [t]hat the party . . . is likely to prevail in the action."

Here, plaintiff has not demonstrated that he is likely to prevail. The court has dismissed all claims in the complaint for failure to state a claim upon which relief can be granted. Accordingly, the court grants defendants' motion to expunge lis pendens.

*F. Plaintiff's motions to amend complaint and to expand page limit*

Plaintiff seeks to amend his complaint by adding Michael A. Bosco, Esq. as a defendant. Plaintiff also asks leave to expand his page limit for his proposed amended complaint.

Plaintiff first attempts to incorporate Bosco's alleged "violations" of the currently asserted causes of action. Plaintiff's proposed amended complaint asserts that Michael Bosco is "intimately intertwined [and] inseparable and connected in conspiracy" to the other defendants, because of Bosco's "former quasi-Govt., high level employers['] connections at: Freddie Mac and Fannie Mae . . . ." (Doc. # 26-3).

Plaintiff also asserts that he "adds violations." However, plaintiff does not appear to add any additional causes of action. Plaintiff attempts to add "a constitutional dimension question" and issues of "constitutional diversity." (Doc. # 26-3 at 1). The court cannot discern any actionable constitutional violations from the plaintiff's ramblings.

The court finds that plaintiff's requested amendment would be futile. Plaintiff fails to plead any facts to connect Michael Bosco to any of the asserted causes of action and fails to plead any facts for the court to discern a constitutional violation.

**IV. Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendants' motion to dismiss for failure to state a claim (doc. # 5), be and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that defendants' motion to expunge lis pendens (doc. # 6) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that plaintiff's motions to amend complaint (doc. # 26) and expand page limit (doc. # 27) be, and the same hereby are, DENIED.

**James C. Mahan**
**U.S. District Judge**

1       IT IS FURTHER ORDERED that plaintiff's motions to quash defenses notice (doc. # 29), for more definite clarification (doc. # 30), and to compel initial pretrial disclosures (doc. # 31) be, and the same hereby are, DENIED as moot.

      DATED June 22, 2015.

                                      /s/ James C. Mahan
                                      UNITED STATES DISTRICT JUDGE